UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ROBYN LITTLE DAVIS          :          DOCKET NO. 15-cv-562

VERSUS          :          JUDGE MINALDI

JAMES ROGERS          :          MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Robyn Little Davis ("petitioner") [doc 11]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. She is currently incarcerated at the Louisiana Correctional Institute for Women. James Rogers ("respondent"), warden, has responded. Docs. 25, 30.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons IT IS RECOMMEDED that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
### BACKGROUND

*A. Conviction*

The petitioner and her co-defendant, Carol "Sissy" Saltzman ("Saltzman"), were indicted in the 14th Judicial District, Calcasieu Parish, Louisiana, on charges of first degree murder. Doc.

25, att. 13, pp. 91–92. The indictment was subsequently amended to charges of second degree murder. *Id.* The charges related to the June 29, 2009 killing of the petitioner's husband, William Brian Davis ("victim").

Following a jury trial and on May 10, 2012, both the petitioner and Saltzman were convicted of second degree murder by a vote of 11-1. *Id.* at 83–84. Accordingly, they were sentenced to mandatory terms of life imprisonment without benefit of probation, parole, or suspension of sentence. Doc. 25, att. 41, pp. 165–66.

### B.  Direct Appeal

The petitioner appealed her conviction and sentence to the Louisiana Third Circuit Court of Appeal. *See State v. Davis*, 129 So.3d 554 (La. Ct. App. 3d Cir. 2013). She raised nine assignments of error.  Relevant to the claims here are the following:

1. The trial court erred in failing to swear in the jury as required by LA. C. CR. P. art. 790 and then granting the State a continuance after the commencement of the trial.
2. The trial court erred as a matter of law in not finding prejudice and not granting the Defense's Motion to Quash.
3. The trial court erred as a matter of law in not finding prejudice and not granting the Defense's Motion to Dismiss.[1]
4. The trial court erred in failing to grant the Defendants' Motion to Dismiss on grounds of double jeopardy, and the Third Circuit erred in finding that the motion to dismiss was moot.

*State v. Davis*, 2013 WL 2181053, *4–*38 (La. Ct. App. 3d Cir. May 6, 2013) (appellate brief). The Third Circuit denied relief on the merits for these claims. *Davis*, 129 So.3d at 583–602.

The petitioner sought a writ of certiorari and/or review with the Louisiana Supreme Court, which request was denied. *State v. Davis*, 149 So.3d 1186 (La. 2014). She then applied to the

---

[1] Claims 2 and 3, which were briefed together. *Davis*, 2013 WL 2181053 at *9–*13.

United States Supreme Court for a writ of certiorari, which was denied on November 17, 2014.

*Davis v. Louisiana*, 135 S.Ct. 678 (2014).

### C.  *Federal Habeas Petition*

The petitioner did not seek collateral review at the state level.[2] The instant petition was first filed on March 3, 2015. Doc. 1, att. 2, p. 90. It was amended twice. *See* infra note 4. In the final amended pleading, the petitioner phrased her claims for relief as follows:[3]

1.  Were the petitioners United States Constitutional Fifth Amendment rights against double jeopardy violated when, all of the following was allowed over defense counsels' objection: 1) the State of Louisiana was allowed to begin the State's case against the petitioner by the taking of videotaped testimony of its crime scene investigator without the jury present (though there is not procedural vehicle to allow such a proceeding under Louisiana law). Forcing the defense to reveal portions of its defense on cross examination, and 2) one day later, after the jury was finished being picked, the trial court refused to swear the jury, as required by Louisiana law, and 3) the trial court then allowed the State a continuance –also a violation of black letter statutory Louisiana law since the trial had "commenced"--, and 4) the original jury which the trial court had refused to swear was released, and 5) before a new and different jury picked five months later the same crime scene investigator was allowed to testify anew before the "new" jury with the defense not being allowed to use the prior video-taped testimony for cross-examination or the jury being aware of her prior sworn testimony? It is the petitioners contention that they were "put to trial" under constitutional standards embodied in the United State Constitution Fifth Amendment initially, and then five months alter the State was allowed to begin anew its case before a new and different jury and thus "put to trial a second time in violation of the Fifth Amendment and any reasonable application of Louisiana law.

2.  Were the petitioners United States Constitutional Fifth Amendment substantive and procedural due process right violated due to the Louisiana Intermediate Appellate Court's:

---

[2] In the § 2254 coversheet completed for this petition, the petitioner was asked whether she had "previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court." Doc. 11, p. 3. She selected "Yes" but only provided information for her unsuccessful application for relief from judgment to this court under Fed. R. Civ. P. 60(b). *Id.*; *see* Doc. 10 (memorandum order instructing the petitioner to file a § 2254 petition if she wished to seek relief from her state court conviction).

[3] The text of these complaints is exactly as it appears in petitioner's memorandum, concise and accurate truncation of those complaints proving too difficult for this writer to manage.

1) Failure to articulate any legitimate and justifiable reasonable behind its decision regarding the illegal continuance and the prejudice it caused defendants" and

2) the decision that defendants suffered no prejudice was an unreasonable determination of the facts in light of the evidence presented, both of which shocks the conscience, contravene the concept of ordered liberty, and simply amount to an unfair trial and appellate review of the case?

3. Were the petitioners' United States Constitutional Sixth Amendment right to confront the State's witnesses violated by the trial court's prohibiting the defense from using, on cross examination at trial before the jury that heard the case, the previously video-taped testimony of the crime scene investigator which took place over defense counsels' objection before the initial jury was selected but not sworn?

Doc. 28, att. 1, pp. 31–33.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly,

in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1.  Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when

review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[4] or (2) the

---

[4] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's conviction became final with the judgment of the United States Supreme Court on November 17, 2014. Therefore **106 days** accrued until the filing of the instant petition on March 3, 2015,[5] and the matter is timely.

---

[5] The respondent treats the date of filing from the first amended pleading on September 23, 2015. In her original pleading the petitioner sought relief under Fed. R. Civ. P. 60(b). On this court's order she amended her petition to seek relief on the same claims using the appropriate vehicle, 28 U.S.C. § 2254. Docs. 10 & 11. She amended the petition a second time on April 29, 2016, again in response to court order, to dismiss her unexhausted claims and rephrase other claims so that this court could determine exhaustion. Docs. 27 & 28; *see* doc. 28, att. 1, p. 63 (date of filing).

An amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

### B. Exhaustion of State Court Remedies and Procedural Default

Though the rephrased claims in the instant petition do not align perfectly with the claims raised on direct appeal, it appears that all were presented in adequate fashion to the state courts.[6] Accordingly, the claims pass exhaustion review. We also note that relief was denied on the merits for all of the claims raised herein. Accordingly, none is subject to procedural default.

### C. Substantive Analysis

Having determined which claims are viable, we now review each under the standards enunciated above.

#### 1. Double jeopardy

The petitioner first alleges that the state violated her constitutional protection against double jeopardy when the trial court granted a continuance following the sudden illness of the prosecutor.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. U.S. CONST. amends. V, XIV. "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments

---

pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). This rule applies in habeas proceedings, as long as the amended petition does not assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) (quoting *Mayle v. Felix*, 125 S.Ct. 2562, 2566 (2005)). Though the procedural vehicle differs, the bases for the surviving claims were all raised in the March 2015 pleadings. Accordingly, the amended petitions relate back and the effective date of filing is March 3, 2015.

[6] The respondent contends that the petitioner introduces new legal theories under the second claim by arguing that the prosecutor engaged in ex parte communications with the trial court. However, the alleged conversation under attack was mentioned in the petitioner's appellate briefs and identified there as an ex parte communication. *Davis*, 2013 WL 2181053 at *4–*5. Accordingly, we consider this claim sufficiently exhausted.

for the same offense." *United States v. Halper*, 109 S.Ct. 1892, 1897 (1989), abrogated on other grounds by *Hudson v. United States*, 118 S.Ct. 488 (1997).

The alleged double jeopardy violation here centers on the second abuse. This case was originally called for trial on November 7, 2011. Doc. 25, att. 13, p. 43. From that date through November 10, 2011, jury selection took place. *Id.* at 43–51. Court reconvened on November 11, 2011. *Id.* at 52. District Attorney John DeRosier appeared and requested a continuance due to a health emergency on the part of the prosecutor, Rick Bryant. *Id.*; doc. 25, att. 27, pp. 166–69. Over the objections of defense counsel, the court granted the continuance and denied the defense's request to swear in the jury. Doc. 25, att. 13, p. 52.

The defense then filed a Motion to Quash Prosecution and for Dismissal of the Indictment with Prejudice. A hearing took place on this motion over three days in January 2012 and the reasons for/impact of the continuance were fully explored. Doc. 25, att. 27, pp. 64–276; doc. 25, att. 28, pp. 26–251; doc. 25, att. 29, pp. 26–80. The motion relied heavily on the fact that the trial court had allowed the state to perpetuate the testimony of Deputy Roxanne Baumgarten, who had collected evidence at the crime scene.[7] At conclusion of the hearing trial court denied the motion. Doc. 25, att. 29, p. 74.

It is well established that "jeopardy attaches when the jury is empaneled **and** sworn."[8] *Martinez v. Illinois*, 134 S.Ct. 2070, 2074 (2014) (emphasis added) (internal quotations omitted). The petitioner alleges here that jeopardy should have attached anyway because the trial court erred in failing to swear in the jury. She claims that the defense was prejudiced when they were forced

---

[7] The perpetuation was requested due to the state's confusion about Baumgarten's vacation dates. Doc. 25, att. 28, pp. 181–84.

[8] The petitioner relies on *Bretz v. Crist*, 546 F.2d 1336 (9th Cir. 1976), *aff'd*, 98 S.Ct. 2156 (1978), in which the Ninth Circuit held that the trial court had subjected the petitioner to double jeopardy by permitting a second trial as to a previously dismissed count of the indictment. However, that case also clearly stated that jeopardy could not attach until the jury was sworn. 546 F.2d at 1343–46.

to reveal their trial strategy and that the state thus had the opportunity to gather additional evidence based on this revelation after the continuance was granted.

La. C. Cr. P. art. 296 provides that "[a]fter an indictment has been found by a grand jury, the preliminary examination shall be limited to the perpetuation of testimony and the fixing of bail." The article offers no guidelines as to when testimony should be perpetuated and so it appears within the discretion of the trial court. Despite the fact that the state later admitted to a mistake over Baumgarten's vacation dates, the petitioner fails to show how the perpetuation was an abuse of discretion or a signal that the trial had actually commenced.[9]

Even assuming that the continuance was granted in error,[10] the Third Circuit disagreed that the petitioner was in any way prejudiced by the failure to swear in the jury in November 2011. It affirmed that jeopardy had not attached when the continuance was granted. *Davis*, 129 So.3d at 586. It also found no grounds for reversal based on the extra preparation time afforded to the state by the continuance, noting no prejudice in the perpetuation of Baumgarten's testimony and that the defendants benefited from extra DNA testing performed between continuance and trial. *Id.*

---

[9] The petitioner also alleges that her rights were somehow violated when the jury selected in November was dismissed and a new jury was selected in April. However, as the Third Circuit pointed out, the petitioner fails to show that she was in any way prejudiced through being tried by the jury selected in April rather than the one selected in November. Accordingly, this claim offers no basis for relief.

[10] The Third Circuit held that there was no error, as jeopardy had not attached and so the decision was within the trial court's discretion. *Davis*, 129 So.3d at 586.

The petitioner also fails to show that the trial court's decision was an abuse of discretion. Numerous witnesses, including Bryant himself, testified as to their belief in the seriousness of Bryant's health concerns and their inability to try the case without him. *See* Doc. 25, att. 27, pp. 159–94 (testimony of District Attorney John DeRosier); doc. 25, att. 27, pp. 274–76 & doc. 25, att. 28, pp. 26–36 (Megan Dougherty, Bryant's trial assistant); doc. 25, att. 28, pp. 207–39 (Assistant District Attorney Cynthia Killingsworth); doc. 25, att. 28, pp. 139–51 (Rhonda Bryant, wife of Rick Bryant); doc. 25, att. 28, pp. 151–206 (Rick Bryant).

The testimony above shows that Bryant had been experiencing symptoms all week leading up to the continuance request, including dizziness, chest pains, numbness, and blood in his urine. Doc. 25, att. 28, p. 154. He saw a family practice physician on Thursday, November 10, who advised hospitalization and further testing. *Id.* at 155. Bryant underwent testing on Friday, November 11, and was told "that [he was] not going to die of a heart attack." *Id.* at 156. However, his symptoms had not resolved by that point and he continued to seek treatment after the continuance was granted. *Id.* In return, the petitioner merely alleges without citation to the record that Bryant's health concerns were fabricated. *See* Doc. 28, att. 1, p. 44, 51–52. Accordingly, there is no basis for finding that the continuance should not have been granted.

The petitioner does not contradict these findings but instead makes further conclusory allegations of prejudice not addressed in the Third Circuit's ruling. Specifically, she contends that between the continuance and the trial the state: (1) contacted defense witnesses, (2) submitted further items into evidence, (3) hired a crime scene reconstructionist, (4) presented an expert report, and (5) lost videotaped evidence that would have aided the defense.[11] Doc. 28, att. 1, pp. 43–44. However, she provides no indication as to who the witnesses were or what evidence was submitted or lost. Without basic facts such as these, the court cannot determine to what extent, if any, she was prejudiced by the five and a half month delay in proceedings.

Accordingly, the petitioner has not met her burden and shows no grounds for relief under any part of this claim.

### 2.  *Third Circuit's failure to find prejudice*

Under this claim the petitioner attacks the Third Circuit's ruling upholding denial of the Motion to Quash; however, she fails to raise any specific challenges to the Third Circuit's findings. She instead alleges that the prosecution engaged in ex parte communications with the trial court, but does not disclose what this communication was or how it might have prejudiced her.

The respondent assumes that the petitioner is referring to Bryant's statement during the hearing at the motion to quash about a statement made to his trial assistant. Bryant admitted that he told his assistant, Megan Dougherty, to tell ADA Cynthia Killingsworth that she should ask the court not to swear in the jury due to Bryant's health concerns. *See* doc. 25, att. 28, p. 202. Such a request does not show that any attorney in this matter communicated inappropriately with the trial

---

[11] In the heading for this claim, the petitioner also alleges that she was prejudiced when the defense was barred from using Baumgarten's perpetuated testimony for impeachment. However, she makes no argument related to this contention and cites nothing in the record to support it. It is instead handled *infra* under the third claim.

judge outside of the presence of opposing counsel.[12] Accordingly, the petitioner has not undermined the Third Circuit's findings in any manner and this claim does not entitle her to relief.

### 3.   Prohibition on using Baumgarten's videotaped testimony

Lastly, the petitioner contends that her right under the Sixth Amendment to confront witnesses was violated when the trial court would not allow the defense to use Baumgarten's perpetuated videotape testimony to impeach her live testimony at trial.

The petitioner first claims that the perpetuation of Baumgarten's testimony was an error. As explained above, this accusation is unfounded. The Louisiana Code of Criminal Procedures allows for the perpetuation of witness testimony and the fact that the prosecutor mistakenly believed that there was a conflict based on Baumgarten's vacation dates does not undermine the trial court's decision. Furthermore, the defense was permitted to use a transcript of the perpetuated testimony at trial without objection by the state. Doc. 25, att. 31, p. 251; doc. 25, att. 32, p. 26. Instead, the petitioner's actual complaint seems to be that Baumgarten was allowed to testify at all after having her testimony perpetuated.

As the respondent notes, a petitioner alleging a Confrontation Clause violation must show that the error resulted in sufficient prejudice to her case. *See Dorsey v. Stephens*, 720 F.3d 309, 318 (5th Cir. 2013) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721–22 (1993)). An error is harmless, thus barring habeas relief, "unless it had substantial and injurious effect or influence in determining the jury's verdict." *Dorsey*, 720 F.3d at 318 (internal quotation omitted).

To the extent that any error occurred, the petitioner fails to show that it was not harmless. She asserts that cross-examination of Baumgarten revealed that the state was not prepared to try

---

[12] Testimony on the Motion to Quash reveals that the Motion for a Continuance was made after a discussion in the trial judge's chambers between defense attorneys, the trial judge, and prosecutors. Doc. 25, att. 27, p. 184. Additionally, the transcript from the Motion for a Continuance shows that the matter was decided after argument from both sides. *Id.* at 36–62.

its case "due to its flaws in crime scene investigation and lack of evidence" and complains generally throughout her brief that the perpetuation allowed the state access to the defense strategy and the opportunity to gather additional evidence before the trial commenced. Doc. 28, att. 1, p. 47. However, she does not identify any specific instances of prejudice.

As the respondent points out, it was already known that the petitioner had entered a plea of not guilty.  Doc. 30, att. 1, p. 24. Therefore the defense strategy that the petitioner argues was unjustly revealed by Baumgarten's perpetuated testimony, involving challenges to the collection of evidence, should have come as no surprise to the state. The respondent admits that additional testing was performed during the continuance but maintains that this was because a different prosecutor took over who requested the extra testing based on her personal approach to trying the case. *Id.* at 22–23. The additional testing revealed unidentified male DNA under the victim's fingernails and at the crime scene. *Davis*, 129 So.3d at 590 (La. Ct. App. 3d Cir. 2013). LeAnne Suchanek, who was accepted as an expert in DNA analysis, testified at trial that this DNA likely belonged to the victim. Doc. 25, att. 32, pp. 209–40. She also stated definitively that the tests revealed no female DNA at the crime scene. *Id.* at 236. In light of this testimony, as the Third Circuit suggested, it is clear that the tests benefitted the petitioner because the lack of female DNA supported the petitioner's argument that she was not present at the crime scene. *Davis*, 129 So.3d at 589.

Further, the additional tests did not substantially impact Baumgarten's testimony. In both her perpetuated testimony and her trial testimony, Baumgarten reviewed the evidence collection procedure and acknowledged that the evidentiary value of the crime scene could have been compromised by police activity. Doc. 25, att. 26, pp. 173–97; doc. 25, att. 32, pp. 34–53. If Baumgarten's perpetuated testimony gave the state the opportunity to fix errors in its case and

recover additional evidence, the state did not seize that opportunity in any way that proved prejudicial to the petitioner. As the Third Circuit explained, "the evidence that convicted the defendants was their inconsistent statements to police and the fact that their cellphone records placed them in the vicinity of the murder both the day before and the day of the murder." *Davis*, 129 So.3d at 590. The state's answer recounts in exhaustive detail the evidence at trial supporting the petitioner's guilt, and the petitioner fails to contradict any of this evidence or explain why it should not have been introduced. *See* doc. 30, att. 1, pp. 23–44. Therefore the petitioner has not shown sufficient prejudicial impact from the perpetuated testimony and is not entitled to *habeas* relief under this claim.

### IV.
#### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 22nd day of June, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE